IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Leon Brown, Jr., | ) | Civil Action No.:  8:13-01459-MGL-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On August 17, 2010, Plaintiff filed an application for DIB alleging an onset of disability date of August 8, 2010.[1]  [R. 139–145.]  Plaintiff's claims were denied initially on January 4, 2011 [R. 72], and on reconsideration on April 19, 2011 [R. 90–91] by the Social Security Administration ("the Administration").  Plaintiff requested a hearing before an

---

[1] Plaintiff also filed an application for Social Security Income ("SSI") benefits on March 17, 2010 [R. 135–138], however, it was determined that Plaintiff was not eligible for SSI benefits because of his earnings [R. 76–80].  Plaintiff has not appealed that decision.

dministrative law judge ("ALJ") and on December 12, 2011, ALJ Thomas G. Henderson conducted a de novo video hearing on Plaintiff's claims.[2]  [R. 31–69.]

The ALJ issued a decision on January 12, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 15–30.]   At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since August 8, 2010, the alleged onset date.  [R. 20, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: obesity, insulin dependent diabetes mellitus, degenerative joint changes of the right ankle, and left shoulder impingement.  [R. 20, Finding 3.] The ALJ also determined Plaintiff had a non-severe impairment of obstructive sleep apnea ("OSA").   [R. 20.]   At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20,  Finding 4.] The ALJ specifically considered Social Security Ruling ("SSR") 02-01 with respect to obesity; Listing 1.02 with respect to musculoskeletal impairments; and Listings 9.0, 1.00, 2.0, 4.00, 5.00, 6.00,8.00, 11.00, and 12.00 with respect to Plaintiff's diabetes.   [R. 21.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following finding with respect to Plaintiff's residual functional capacity ("RFC"):

---

[2]Plaintiff was represented at the hearing by Eleanor Swierk, a non-attorney representative. [R. 31.]

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perfonn a reduced range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. He may perform postural activities occasionally, but should avoid work hazards and overhead work, as well as concentrated exposure to high background noise.

[R. 21, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was able to perform his past relevant work as a dispatcher.  [R. 25, Finding 6.]  Consequently, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, at any time from August 8, 2010, through the date of the decision.  [R. 25, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–6.]  Plaintiff filed this action for judicial review on May 30, 2013.  [Doc. 1.]

## **THE PARTIES' POSITIONS**

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)    failing to properly perform an analysis of Plaintiff's ability to perform his past relevant work [Doc. 19 at 15–22];

(2)    failing to properly explain his RFC findings [*id.* at 22–25]; and,

(3)    failing to meaningfully assess Plaintiff's credibility [*id.* at 25–28].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)    properly determined Plaintiff could return to his past relevant work [Doc. 23 at 8];

(2)    properly assessed Plaintiff's RFC [*id.* at 11–13]; and,

3

(3)    properly assessed Plaintiff's credibility  [*id.* at 13–15].

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.  [*Id.* at 15.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

4

Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

5

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).    Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five,

the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined

9

effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's RFC[5] with the physical and mental demands of the kind of work he has done in

---

[5]RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

the past to determine whether the claimant has the residual functional capacity to do his

past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[6]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to perform

other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because

we have found that the grids cannot be relied upon to show conclusively that claimant is

not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because

13

"it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> 
> ...
> 
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## <u>APPLICATION AND ANALYSIS</u>

**Past Relevant Work**

Plaintiff argues that the ALJ did not properly evaluate his past work as a "dispatche,r"  which was not his assigned job but something he was asked to do until his employer could determine whether he could return to work as a driver.  [*See* Doc. 19 at 17–18.]  Further, Plaintiff challenges whether the ALJ properly assessed his ability to

perform the job as "dispatcher" as it was actually performed in the national economy since

he was merely assisting a dispatcher and not actually performing the full scope of the job.

[*Id*. at 18.]

### ALJ's Evaluation of Past Relevant Work

In determining that Plaintiff's work as a dispatcher was "past relevant work," the ALJ

explained:

> The vocational expert testified that the claimant has past work as a dispatcher (SVP 5, sedentary). I find that the claimant performed this work within 15 years prior to the time of adjudication of the claim, performed such work at substantial gainful activity levels, and performed such work for a time period sufficient to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. Although the claimant submitted a statement after the hearing that he did not perform "the full duties" (Exhibit 23E), he described doing the work of a dispatcher for one year at the hearing. I note that the vocational expert described the specific vocational preparation (SVP) for this job as "5", meaning the job takes over 6 months up to and including one year to learn. Consequently, I find this job is past relevant work.

[R. 25.] The ALJ also concluded that he found the Plaintiff was capable of performing the

job of dispatcher as it is actually and generally performed. [*Id*.]

### Discussion

"Past relevant work" is defined by the regulations as "work that you have done within

the past 15 years, that was substantial gainful activity, and that lasted long enough for you

to learn to do it." 20 C.F.R. § 404.1560(b)(1). A plaintiff is not disabled under the Act if he

can return to past relevant work as it is customarily performed in the economy or as the

claimant actually performed the work. SSR 82–62.

The plaintiff bears the burden of establishing his inability to work within the meaning

of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by

18

showing he is unable to return to his past relevant work.  Once the claimant establishes an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.   In determining a claimant's ability to perform past relevant work, the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' [("DOT")] and its companion volumes and supplements."  20 C.F.R. §§ 404.1560(b)(2), 416.960(b) (2).  Here, the sequential evaluation terminated at Step Four, where Plaintiff had the burden of proving he could not perform past relevant work.  It is at Step Five where the Commissioner would have been required to prove that Plaintiff could "make an adjustment to other work."  20 C.F.R. §§ 404.1520(a)(4)(v), 416. 920(a)(4)(v).

In this case, Plaintiff testified that he worked driving a truck but could no longer drive due to his having to take insulin for his diabetes.  [R. 42.]  Consequently, he was transferred to a desk job for about a year working as a dispatcher.  [*Id.*] While working as a dispatcher, Plaintiff claims he had problems with his legs swelling and had to wear compression stockings which helped the swelling.  [R. 42–43.]  Plaintiff testified that he left his job as a disptacher in August 2010 after he was approved for disability through the federal government.  [R. 43.]  Plaintiff testified he applied for disability based on his sleep apnea, back pain, arthritis and kidney disease. [*Id.*]  The vocational expert ("VE") testified at the hearing that the job of dispatcher was sedentary, semi-skilled work, with DOT number 379.362-018.  This job, as described in the DOT, would require Plaintiff to be able to perform the following functions:

19

> Operate[] communication equipment to receive incoming calls for assistance and dispatches personnel and equipment to scene of emergency: Operate[] telephone console to receive incoming calls for assistance. Question[] caller to determine nature of problem and type and number of personnel and equipment needed, following established guidelines. Scan[] status charts and computer screen to determine units available. Monitor[] alarm system signals that indicate location of fire or other emergency. Operate[] two-way radio to dispatch police, fire, medical, and other personnel and equipment and to relay instructions or information to remove units. Type[] commands on computer keyboard to update files and maintain logs. Test[] communications and alarm equipment and backup systems to ensure serviceability. May provide pre-arrival instructions to caller, utilizing knowledge of emergency medical techniques. May activate alarm system to notify fire stations.

DOT, available at http://www.occupationalinfo.org/37/379362018.html (last visited July 19, 2014).    Plaintiff contends he is unable to perform the job of dispatcher because the swelling in his bilateral lower extremities and ankle would impair his ability to focus and concentrate on his tasks. [R. 291.]

Based on the above, the Court finds no error in the ALJ finding that Plaintiff's past work as a dispatcher is past relevant work.  As an initial matter, the Court notes ALJ properly found Plaintiff's work as a dispatcher was "work that [Plaintiff had] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [Plaintiff] to learn to do it." *See*, 20 C.F.R. § 404.1560(b)(1).  Additionally, the Court notes that Plaintiff testified that he left the job as a dispatcher because his disability request based on his sleep apnea, back pain, arthritis and kidney disease was approved, not because he could not perform the job due to swelling or an inability to focus or concentrate, as Plaintiff now suggests.

Further, the Court concludes that while Plaintiff claims he performed only portions of the job, assisting others who actually worked as dispatchers, Plaintiff has failed to put forth evidence as to why he is unable to return to his past relevant work, either as it was

actually performed, or as it is generally performed.  Accordingly, the Court finds the ALJ's decision is supported by substantial evidence and that Plaintiff failed to meet his burden on this issue.

**Residual Functional Capacity/Credibility**

Plaintiff argues the ALJ erred when he dismiss Plaintiff's sleep apnea as non-severe[7] with no significant impact on Plaintiff's ability to work, and when the ALJ found Plaintiff had no significant limitation on his ability to sit throughout the day, despite his ongoing problems with swelling and edema in his legs.  [Doc. 19 at 23–24.] The Commissioner contends the ALJ specifically consider Plaintiff's alleged fatigue and his problems with edema and swelling, but reasonably found that Plaintiff's allegations were not credible to the extent alleged. [Doc. 23 at 13.]

### *ALJ's RFC Determination*

The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means

---

[7]Even if the ALJ erred in finding Plaintiff's sleep apnea non-severe rather than severe, the error is harmless because the ALJ clearly found Plaintiff suffered from another severe impairment and proceeded beyond Step Two in the sequential process, considering the limitations imposed by Plaintiff's sleep apnea in his RFC assessment. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.2007) (finding that the ALJ's failure to label an impairment as severe at Step Two was harmless when the ALJ discussed its limitations at Step Four).

> 8 hours a day, for 5 days a week, or an equivalent work
> schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to
> medically determinable impairments. It is incorrect to find that
> [a claimant] has limitations or restrictions beyond those caused
> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the [claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i.e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC. . . .

Id. at 34,476.

To assess Plaintiff's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

### *The ALJ's Credibility Analysis*

In considering Plaintiff's testimony regarding his limitations, the ALJ must consider all relevant evidence of record.  *See* SSR 96-7p, 61 Fed. Reg. at 34,485 (whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record).  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a non-exhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms.  20 C.F.R. § 1529(c)(3).  If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination.  *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

23

Here, in considering Plaintiff symptoms, the ALJ followed a two-step process by which he first determined that Plaintiff had an underlying medically determinable physical or mental impairment that could reasonably be expected to produce his pain or other symptoms. Specifically, the ALJ noted Plaintiff's testimony that

> he has not worked since his onset date. He said he last worked as a medical dispatcher. He stated that he filed an application for disability retirement and it was approved. The claimant testified that he lives with his brother. During the day, he reported that he reads, and visits and goes places with his sisters. He stated that they sometimes go fishing or for a walk, and to church on Sundays. He stated friends come over to his house to visit. The claimant said that he used to walk 3 miles, 4 to 5 times a week in November 2009 but stopped because oftime constraints with work. This year the claimant reported that his doctors told him he should walk to help with weight loss. When walking the claimant said that he had to stop and take a break every 5 minutes. However, he stated that he had to stop walking because it hurt his back. The claimant reported swelling in his knees, back, and ankles. He stated that he also has sleep apnea. He reported he would use his CP AP machine for a couple of hours then take it off because he is claustrophobic. He said that he was changed to a BPAP machine. He stated that he experiences fatigue and naps a few times a day. He said that he does not drive because he would probably fall asleep. However, he denied difficulty sleeping at night.

[R. 22.] At the second step of the two-step process, the ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limited effects of these symptoms are not fully credible to the extent they are inconsistent with the RFC. [*Id.*] The ALJ explained as follows:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant testified that he visits with his sisters who take him places. He reported going fishing, walking, attending church, as well as reading and performing housework and yard work. (Exhibit 13F). Moreover, the evidence of record shows and the claimant testified that he has been doing better since he has been more compliant with treatment. Despite the

24

claimant's presentation at the hearing with a cane, the evidence of record through December 2011 indicates he walked well without one.

The claimant is morbidly obese. He is 6 feet, 1 inch and weighs approximately 294 pounds, which equates to a Body Mass Index of 38.8, placing him in the obese category for adults of his height. The undersigned has evaluated this impairment according to the requirements of Social Security Ruling 02-lp. According to the National Institutes of Health (NIH), it is individuals of obesity, as defined above, who suffer the greatest risk of developing obesity-related impairments. Treatment notes and the claimant's activities of daily living reveal that despite obesity, the claimant was able to move about generally well and sustain consistent function. Although, the claimant's obesity may aggravate his ability to perform work-related activities, it does not impose greater limitations than those inherent in the residual functional capacity stated above. Moreover, the claimant testified that he had been losing weight.

In terms of diabetes mellitus, the evidence of record indicates improvement when compliant with treatment and diet modifications. At an examination in August 2010, the claimant's A1c level was 3 percent, which his physician stated was a big accomplishment for him. . . .

. . .

The claimant has also been diagnosed with degenerative joint changes of the right ankle. Since the claimant's onset date, he has been treated for right lower extremity edema. However, no gait ataxia was observed during examinations, and he reported walking 3 miles per day, 4 to 5 days a week in August 2010. The claimant was prescribed medications and compression hose. He was released without limitations. In September 2010, the claimant reported continued edema but stated that he had not yet started wearing the compression hose. (Exhibits IF, 3F). The claimant reported ankle pain in January 2011, during a consultative evaluation with examiner Harriett Steinert, M.D. X-rays showed mild soft tissue swelling and degenerative joint changes but were otherwise unremarkable. He was able to get on and off the examination table by himself. There was no tenderness to palpation of any joints, no inflammation, no swelling or deformity. There was no pedal edema in either lower extremity. The claimant was able to walk across the room with no assist device with a normal gait. He was able to walk on his heels and toes, tandem walk although not squat. (Exhibits 5F, 6F). Physical therapy records from April 2011 indicate that the claimant ambulated unassisted. It was noted that he could walk for 3 miles without pain. He also reported that he had recently been doing yard work. In June 2011, the claimant reported walking 3 miles per day, 4 to 5 times a week. (Exhibit 13F). Progress notes from October and December 2011 indicate that the claimant walked with a

normal gait, and had symmetrical motor strength in his lower extremities.
(Exhibit 14F).

[R. 23–24.]

### Discussion

In evaluating subjective complaints, the United States Court of Appeals for the
Fourth Circuit has stated that "the determination of whether a person is disabled by pain
or other symptoms is a two-step process." *Craig*, 76 F.3d at 594.  In making these
determinations, the ALJ's decision "must contain specific reasons for the finding on
credibility, supported by the evidence in the case record, and must be sufficiently specific
to make clear to the individual and to any subsequent reviewers the weight the adjudicator
gave to the individual's statements and the reasons for that weight." SSR 96–7p.

"[A]llegations concerning the intensity and persistence of pain or other symptoms
may not be disregarded solely because they are not substantiated by objective medical
evidence." *Id.* (emphasis added).  "This is not to say, however, that objective medical
evidence and other objective evidence are not crucial to evaluating the intensity and
persistence of a claimant's pain and the extent to which it impairs her ability to work."
*Craig*, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the
extent they are inconsistent with the available evidence, including objective evidence of the
underlying impairment, and the extent to which that impairment can reasonably be
expected to cause the [symptoms] the claimant alleges she suffers." *Id.*  The ALJ is within
bounds to disregard Plaintiff's testimony to the extent it is inconsistent with the objective
medical evidence in the record.  *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th
Cir.2005); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986); *see also Mickles v.*

26

*Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (noting that the "only fair manner to weigh a subjective complaint is to examine how pain affects the routine of life"). The ALJ's responsibility is to "make credibility determinations—and therefore sometimes must make negative determinations—about allegations of pain or other nonexertional disabilities." *Hammond*, 765 F.2d at 426.

Plaintiff takes issue with the ALJ's finding regarding the effect of his sleep apnea and swelling in his lower extremities on his ability work.  To the extent Plaintiff seeks to have this Court reweigh the evidence presented with regard to Plaintiff's limitations, the argument is unavailing because it is not within the court's province to weigh conflicting evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1986) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1973) (holding even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

Upon consideration of the ALJ's decision and the evidence of record,  the Court finds the ALJ's conclusion reasonable that if Plaintiff is sleeping well at night (as he testified), tiredness during the day should not be as limiting as described.  Additionally, as stated before, Plaintiff testified to leaving his dispatcher job because his disability was approved, not for reasons due to swelling.  Further, Plaintiff testified that when he sits using the compression stockings, he has some swelling but it is not severe and that the swelling does

not bother him when he gets up. [R. 59–60.] Accordingly, the Court finds the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence.

Because the ALJ found Plaintiff's limitations due to his sleep apnea and swelling not credible, he was not required to include those limitations in the RFC.  The decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. *Hays*, 907 F.2d at 1456.  Thus, the Court finds the records provide substantial evidence to support the RFC found by the ALJ.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


July 25, 2014                              /s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge